N. B. BROWN ET ALS. v. HENRY BROWN ET ALS.

(Filed 17 May, 1916.)

1. **Deeds and Conveyances—Undue Influence—Fraud.**

> Undue influence which will invalidate a paper-writing purporting to be a deed need not necessarily consist in active fraud, and it is sufficient if it amounts to coercion produced by persistent importunity, or by a silent and controlling influence of a strong will over a weaker one, destroying free agency and causing the testator to do what he would not otherwise have done if left to himself.

2. **Same—Circumstantial Evidence—Trials—Questions for Jury.**

> Undue influence over the mind of a testator in making his deed may be inferred by the jury from a number of facts, each of which standing alone may have but little weight, but taken collectively may satisfy a rational mind of its existence.

3. **Same—Confidential Relations—Presumptions.**

> In a suit to set aside a paper-writing, purporting to be the deed of the deceased, for undue influence, to some of his heirs at law, there was evidence tending to show that the deceased conveyed the lands in question to two of his sons, who were living with him and had entire control and management of his business and property; that he was old and infirm, drank a great deal, and was generally in no condition to exercise sound judgment, and did not know what he was doing when he made the deed; that there was an inadequacy of consideration: *Held,* sufficient to raise a presumption of undue influence, and the issue should be submitted to the determination of the jury.

APPEAL by plaintiffs from *Harding, J.,* at March Term, 1915, of YADKIN.

Civil action, tried upon these issues:

1. Did George W. Brown, deceased, have sufficient mental capacity to execute the deed from George W. Brown and wife, Priscilla Brown, to Mark Brown, dated 25 September, 1910, recorded in Book S, page 260, at the time of the execution of said deed? Answer: "Yes."

2. Did George W. Brown, deceased, have sufficient mental capacity to execute the deed from George W. Brown and wife, Priscilla Brown, to Henry Brown, dated 25 September, 1900, recorded in Book S, page 262, at the time of the execution of said deed? Answer: "Yes."

3. Did George W. Brown, deceased, have sufficient mental capacity to execute the deed from George W. Brown and wife, Priscilla Brown, to Henry Brown, G. B. Vestal, and T. W. Wagoner, dated 19 January, 1903, recorded in Book U, page 13, at the time of the execution of said deed? Answer: "Yes."

4. Did George W. Brown, deceased, have sufficient mental capacity to execute the deed from George W. Brown and wife, Priscilla Brown, Mark Brown and wife, J. D. Brown, to Henry Brown, dated 27 March, 1903, recorded in Book U, page 110, at the time of the execution of said deed? Answer: "Yes."

5. Was the execution of the deeds referred to above in the first, second, third, and fourth issues by George W. Brown or either of them procured by fraud, or the exercise of undue influence of the defendants, or of any of them, upon said George W. Brown? Answer: "No."

6. Did George W. Brown die seized and possessed of any land not described in the deeds above referred to in the first, second, third, and fourth issues? Answer: "No" (by consent of plaintiff and defendant).

7. Did George W. Brown die seized and possessed of the land described in the complaint? Answer: "No."

From the judgment rendered, plaintiff appealed.

*A. E. Holton, Benbow & Hanes for plaintiffs.*
*E. L. Gaither for defendants.*

BROWN, J. This is an action for partition in which the defendants plead sole seizin. George W. Brown, during his lifetime, was seized and possessed of certain lands in the county of Yadkin, described in the deeds referred to in the issues. The plaintiffs and the defendants are his children and heirs at law. The defendants claim the lands by virtue of the said deeds, and the plaintiffs aver that the said deeds were obtained by fraud and undue influence of the defendants, and that the said George W. Brown did not have sufficient mental capacity to make a deed. There are a number of exceptions taken by the plaintiffs on the

trial which it is unnecessary to comment upon in view of the fact that there is to be another trial.

The court instructed the jury that "There is no evidence that the execution of the deeds in question by George W. Brown was procured by the fraud or the exercise of undue influence of any of the defendants upon the said George W. Brown, and you are, therefore, instructed to answer the fifth issue 'No.'"

In this we think there was error, as in our opinion there is some evidence that the defendants, Mark and Henry Brown, procured the execution of the deeds by the exercise of undue influence. This particular influence, while in some cases denominated a fraudulent influence, does not necessarily require the proof of active fraud. It is really a coercion produced by importunity or by a silent and strong influence, which a strong will will often exercise over a weak one, and which influence cannot well be resisted. Undue influence is said to be that which destroys free agency and constrains one whose act is brought in judgment to do what he otherwise would not do if left to himself. 39 Cyc., p. 687.

It is an influence which acts to the injury of the person who is swayed by it. Experience has shown that direct proof of undue or fraudulent influence is rarely attainable, but inference from circumstances must determine it. Undue influence is generally proved by a number of facts, each of which standing alone may be of little weight, but, taken collectively, may satisfy a rational mind of its existence. For a discussion on the subject, see *Everett's Will,* 153 N. C., 85.

There is evidence in this case tending to prove that at the time of the execution of the deeds to the defendants, their father, George W. Brown, was a very old and infirm man; that he was of a weak and unsound mind; that two of the defendants, Mark and Henry Brown, were living with him and had the entire control and management of his business and property; that he drank a great deal and generally was in a condition not to exercise sound judgment. There is also some evidence of inadequacy of consideration and that the defendants said the land did not cost them much, and also evidence tending to prove that George W. Brown did not know what he was doing when he made the deeds.

These two sons occupied a very confidential relation towards their father, and there cannot be any doubt but that they had opportunity—whether it was taken advantage of or not—to procure from him these deeds for an inadequate consideration.

It is very generally held, when a will or deed is executed through the intervention of a person occupying a confidential relation to the maker of the instrument, whereby such a person becomes a large beneficiary, the circumstances create a strong suspicion that undue influence has been exerted. Generally, evidence of power over a testator, especially of one of weak mind, or suffering from age and bodily infirmity, though

not to such extent as to destroy testamentary capacity, has been held to be sufficient to raise a presumption that ought to be made and overcome before a will is allowed to be established. *Robinson v. Robinson*, 203 Pa. St., 403; *Miller v. Miller*, 187 Pa., 572; *Boyd v. Boyd*, 66 Pa., 283.

Professor Wigmore says: "Where the grantee or other beneficiary of a deed or will is a person who has maintained intimate relations with the grantor or testator, or has drafted or advised the terms of the instrument, a presumption of undue influence or of fraud on the part of the beneficiary has often been applied." Wigmore on Evidence, sec. 2503.

We think his Honor erred in withdrawing the consideration of the fifth issue from the jury. He should have submitted it upon the evidence for their determination under proper instructions.

New trial.