KATHRYN P. SHEPARD v. RHEEM MANUFACTURING COMPANY, PIEDMONT NATURAL GAS COMPANY, INC., AND ERVIN CONSTRUCTION COMPANY, INC.

(Filed 29 January, 1960.)

**1. Pleadings § 15—**

A demurrer tests the sufficiency of a pleading, admitting for the purpose, the truth of the allegations of fact therein stated and relevant inferences of fact necessarily deducible therefrom.

**2. Pleadings § 3a—**

The complaint must contain a plain and concise statement of the facts constituting the cause of action. G.S. 1-122.

**3. Pleadings § 15—**

A complaint will be liberally construed upon demurrer with a view to substantial justice between the parties, giving the pleader the benefit of every reasonable intendment and presumption, and the pleading must be fatally defective before it will be rejected as insufficient.

**4. Gas § 1: Sales § 30—**

Allegations to the effect that defendant manufactured a gas water heater without an automatic safety device to shut off the gas in the event the pilot light was extinguished or the main burner failed to ignite, that the heater was defectively constructed so that water leaked from the coils down the flue and extinguished the pilot light, and that plaintiff was injured in an explosion resulting when the accumulation of gas was ignited by a spark from her washing machine, *are held* to state a cause of action against the manufacturer.

**5. Negligence § 8—**

Insulating negligence relates to proximate cause, and is an intervening act which could not have been reasonably foreseen and which becomes the sufficient cause of the injury, and thus breaks the causal connection of the primary negligence.

**6. Gas § 1: Sales § 30— Complaint held not to allege negligence of co-defendants insulating as a matter of law alleged negligence of appealing defendant.**

Allegations to the effect that a construction company constructed a utility room and installed a gas water heater therein without providing the minimum ventilation required by accepted construction methods and that the gas company continued to furnish gas to the residence after it knew or should have known of the danger from the lack of ventilation and the want of an automatic safety device on the heater, etc., *are held* not to allege such negligence on the part of the construction company or the gas company as to insulate the alleged negligence of the manufacturer of the heater in constructing it without a safety device and in constructing it in a defective manner so that water leaked from the coils down the flue, extinguishing the pilot light, resulting in an explosion injuring plaintiff.

HIGGINS, J., took no part in the consideration or decision of this case.

APPEAL by defendant Rheem Manufacturing Company from *Sharp, Special J.*, at August 17, 1959 Schedule A Term, of MECKLENBURG.

Civil action to recover for personal injuries sustained by plaintiff as result of alleged actionable negligence of defendants instituted as entitled in No. 254 *ante,* 746, heard upon separate demurrers filed by its several defendants. The court overruled the demurrer of this defendant, but separately heard and sustained the demurrers of its codefendants. Hence this defendant, the appellant, Rheem Manufacturing Company pursuant to Rule 4 (a) filed its petition for writ of *certiorari* for the purpose of obtaining a review of the order of the Superior Court judge, overruling the demurrer of this defendant to plaintiff's complaint as amended— at the same time the appeals of plaintiff from judgments sustaining the demurrers of its co-defendants are heard and considered in said No. 254 at Fall Term 1959.

The record discloses that defendant Rheem Manufacturing Company filed answer to complaint as originally framed, but demurred to the amended complaint.

Defendant excepts to judgment overruling demurrer, and petitions for writ of *certiorari*, which was granted, and case set to be heard at the call of the 26th District with the appeal in this case.

This defendant files brief in Supreme Court.

The amended complaint, to which this defendant demurred *ore tenus*, in pertient part is as follows:

"2. That the defendant, Rheem Manufacturing Company is a foreign corporation which manufactures and sells automatic gas water heaters for installation and use in residences owned or purchased by members of the general public.

"3. That the defendant, Piedmont Natural Gas Company, Inc., upon information and belief, is a New York corporation authorized to do business in North Carolina, and is a public utility company which sells and delivers natural gas for commercial and residential use under franchise issued to it by the North Carolina Utilities Commission.

"4. That the defendant Ervin Construction Co., Inc., is a North Carolina Corporation * * * engaged in the business of developing, constructing and selling residential properties.

"5. That the residential model automatic gas water heaters made and sold by the defendant Rheem Manufacturing Company are so constructed that the water in the tank is heated by means of a main gas burner located at the bottom of a flue which runs vertically through the center of the tank; that the temperature of the water in the tank is controlled by means of a thermostat which is tied in to the gas supply line that feeds the main gas burner; that when the water in the

tank has been heated to the desired temperature according to the thermostat setting, the gas supplied to the main burner is shut off by the thermostat; and that when the water temperature drops below the thermostat setting the supply of gas to the main burner is reopened and is to be ignited at the burner by a small pilot light which is intended to burn constantly, said pilot light being fed by gas through another line which is uncontrolled by operation of the thermostat.

"6. That natural gas is lighter than air, and when mixed with ordinary elements of the atmosphere is a highly inflammable and inherently dangerous substance.

"7. That by means of pamphlets, some of which were attached to and shipped with its gas water heaters, and by other means, the defendant Rheem Manufacturing Company advertised and represented to the public in general, and to the plaintiff and her husband in particular, that its gas water heaters were safe for use and were equipped with safety devices which would assure 100% control of both the main gas supply and the pilot gas supply— that is, that in the event of failure of the main burner to ignite due to the extinguishment of the pilot light, supplies of raw gas both to the main burner and pilot jet would be completely and automatically shut off, thereby preventing the escape and accumulation of unburned gas in the room where the heater is located.

"8. That on or about June 4, 1955, the defendant Ervin Construction Co., Inc., submitted to the plaintiff and her husband, Perry H. Shepard, plans and specifications for a home which it proposed to erect at 4009 Whitehall Drive, Charlotte, N. C.; that the defendant Ervin Construction Company, Inc., offered to construct said proposed residence in a workmanlike manner according to said plans and specifications and upon its completion to sell and convey it to the plaintiff and her husband.

"9. That the specifications for said proposed residence called for the installation of a 30 gallon gas water heater; that on several occasions during negotiations for the purchase of said home, the plaintiff and her husband questioned representatives of Ervin Construction Co., Inc., concerning the safety of gas water heaters and the plaintiff and her husband were thereupon repeatedly assured and reassured by the defendant Ervin Construction Co., Inc., that the proposed system for heating water by natural gas would be absolutely safe for use in the home as proposed by it.

"10. That the plaintiff and her husband agreed to purchase said home upon its completion and relying on the advertisements and representations of complete safety which were published and made by

the defendants, agreed to the installation therein of a 30 gallon gas automatic water heater.

"11. That proper and well-established installation procedures require that closed rooms, wherein gas water heaters are to be installed, and used, shall be provided with two (2) free air openings * * * that said openings are required in order, among other things, to provide ventilation sufficient to avoid the accumulation of burned and unburned gas.

"12. That, upon information and belief, during the process of construction of said home, the defendant Ervin Construction Co., Inc., purchased from the defendant Rheem Manufacturing Company, or from one of its agents and dealers, a 30 gallon capacity residential model automatic gas water heater which was manufactured by the defendant Rheem Manufacturing Company, and installed it in said home * * *

"13. That said water heater was located and installed by the defendant Ervin Construction Co,, Inc., in a small utility room which was built on to the rear portion of said house; that the said utility room, in interior dimensions, was approximately 6 feet wide, 7½ feet long and 8 feet high; and that said room was constructed so that it was virtually air tight, there being no provision made for filtration of air or gases to or from it.

"14. That the defendant Ervin Construction Co., Inc., in the installation of said water heater negligently and carelessly failed to provide said utility room with any ventilation openings, but on the other hand sealed it tightly so that escaping gas would and did accumulate therein; and that neither the plaintiff nor her husband had any experience or had any special knowledge of their own concerning safety control devices on gas water heaters, neither could ascertain by inspection of the heater whether or not it was equipped with such controls, and neither had any skill, knowledge or experience concerning proper installation procedures for such appliances with respect to the ventilation required where such appliances are installed in closed rooms.

"15. That contrary to the advertisements and representations of the defendant Rheem Manufacturing Company, upon information and belief, the said water heater was not equipped with an automatic control device which would shut off all gas in the event of failure of the pilot light flame or the failure of the main burner to ignite.

"16. That, upon information and belief, the tank of said water heater was constructed by the defendant Rheem Manufacturing Company in a careless and negligent manner in that defective materials or work-

manship or both were employed in fabrication of the flue which ran through the center of the tank directly over the main and pilot gas burner— the same being constructed in such a manner that it would not withstand normal water pressures within the tank and would develop leaks, causing water to run down the flue and onto the pilot light in such a way as to extinguish it.

"17. That during the times herein mentioned the defendant Piedmont Natural Gas Company advertised and represented to the public in general and to the plaintiff and her husband in particular, that natural gas was safe for use in operating home appliances such as the automatic water heater herein described.

"18. That after the said negligently constructed water heater was negligently installed in the closed and unventilated room as hereinabove described, application was made to the defendant Piedmont Natural Gas Company, Inc. for service connection of its gas pipe lines to the gas system in said house, and, upon information and belief, shortly thereafter such connection was made by it.

"19. That on or about the 20th day of December, 1955, and after the unsafe condition hereinabove described was created by the defendants, the plaintiff and her husband, being unaware of said dangerous condition and being unable by ordinary care to learn of said danger, paid the purchase price for said house and the same was conveyed to them by the defendant Ervin Construction Co., Inc.

"20. Upon information and belief, that on or about the 22nd day of December, 1955, the defendant Piedmont Natural Gas Company, Inc. went upon the said premises for the purpose of turning its gas into the system of gas lines and appliances which had been installed in said house by the defendant Ervin Construction Co., Inc., that it did turn its gas into said system, and on that occasion adjusted the controls on the gas appliances in said house, and went into said utility room where it adjusted the controls and lighted the burner of said gas water heater; that at some time between January 1, 1956, and March 31, 1956, Piedmont Natural Gas Company, Inc. again came upon said premises at the request of plaintiff and her husband to adjust the controls on said gas water heater, and it again went into said utility room and made such adjustment; that in so doing, the defendant Piedmont Natural Gas Company, Inc., on both occasions, saw the imminently and inherently dangerous situation then and there existing, and thereby obtained actual knowledge of facts concerning the defective heater and its improper installation which put said defendant on notice of said dangerous situation; and that thereafter it carelessly and negligently furnished to the plaintiff and her husband

gas as fuel for said heater until November 29, 1956, without giving either of them any warning as to said danger.

"21. That the said water heater was operated continuously in the plaintiff's home from the 22nd day of December, 1955, until November 29, 1956, without unusual incident; and that during said period the plaintiff and her family lived in said house continuously and said hot water heater was operated throughout that period without giving to them any warning of its defects or of the dangerous situation caused by the negligence of the defendants, as hereinabove alleged.

"22. That, upon information and belief, during the night or early morning of November 28-29, 1956, the said water heater, as a direct result of the negligence of the defendant Rheem Manufacturing Company in constructing it, developed a water leak in the flue; that the leaking water ran down the flue and onto the pilot light, extinguishing it; that as a result of the negligent failure of the defendant Rheem Manufacturing Company to equip said heater with a safety control which would cut off the supply of gas to the pilot light in the event of its failure, raw and unburned gas continued to flow through said burner and escaped into the utility room; and that as a result of said negligence of the defendant Rheem Manufacturing Company and the joint and concurring negligence of the defendant Ervin Construction Co., Inc., in failing to provide said room with proper ventilators and of the defendant Piedmont Natural Gas Company, Inc., in failing to exercise the duty required of it upon receiving notice of the dangerous situation, a heavy concentration of raw gas accumulated in said room.

"23. That on the 29th day of November, 1956, at about 2:00 P.M., the plaintiff carried clothes into said utility room for the purpose of washing them in an electrically operated washing machine which was located near said heater in the room; that, upon information and belief, when the plaintiff turned on the switch of said washing machine an electrical spark in the motor thereof ignited the gas which had accumulated in said room causing a terrific flash fire or explosion seriously burning the plaintiff as is hereinafter set out.

"24. That the extensive burns, injuries and damages which the plaintiff has sustained and will be required to sustain in the future as a result of said fire or explosion were directly caused by the negligence of the defendant Rheem Manufacturing Company, which negligence joined and concurred with the negligence of its co-defendants, in that:

"(a) The said Rheem Manufacturing Company advertised and represented that said water heater was equipped with an automatic safety control which would prevent the escape of raw and unburned

gas when it knew or by the exercise of due care should have known that such representations and advertisements were false and that the plaintiff would be thereby misled.

"(b) It knew, or in the exercise of due care under the circumstances should have known, that said heater was constructed with defective materials or workmanship in such a manner that it would develop a leak in the flue and that water from the leak would run down the flue and extinguish the pilot light.

"(c) It failed to equip the said heater with an automatic safety valve which would control and shut off the supply of raw gas to the pilot burner in the event of failure of the pilot light.

"(d) It sold and delivered said water heater for the use to which it was put when it knew, or in the exercise of due care under the circumstances should have known, that it would be put to that intended use and that when so used it would be an inherently and imminently dangerous instrumentality.

"25. That the extensive burns, injuries and damages which the plaintiff has sustained and will be required to sustain in the future as a result of said explosion were directly caused by the negligence of the defendant Ervin Construction Co., Inc., which negligence joined and concurred with the negligence of its co-defendants, in that:

"(a) The said Ervin Construction Co., Inc., represented to the plaintiff and her husband and assured and reassured them that said water heater would be installed in a safe and proper place and manner, and that when installed by said Company and put to the use for which it was intended, said heater would be absolutely safe for such use when it knew or, in the exercise of due care under the circumstances, should have known that said representations and assurances were false and that when so used said heater would be an inherently and imminently dangerous instrumentality.

"(b) It installed and sold said heater to the plaintiff and her husband at a time when it knew or, in the exercise of due care under the circumstances, should have known that the same was not equipped with an automatic safety valve which would control and shut off the supply of raw gas to the burners in the event of a failure of the main burner to ignite or in the event of an extinguishment of the pilot light.

"(c) Though it knew or in the exercise of due care under the circumstances should have known that gas was liable to escape from said heater, it failed to provide any ventilation in said room to prevent accumulation of unburned gas therein.

"26. That the extensive burns, injuries and damages which the plaintiff has sustained and will be required to sustain in the future as a

result of said fire·or·explosion were directly caused by the negligence of the defendant Piedmont Natural Gas Company, Inc., which negligence joined and concurred with the negligence of its co-defendants, in that:

"(a) The said Piedmont Natural Gas Company, Inc. advertised and represented that natural gas was safe for domestic use in home appliances, including automatic hot water heaters such as the one involved here, when it knew that unless great care is exercised in the manufacture and installation of the appliance in which the gas is to be used, such gas is an inherently and imminently dangerous substance.

"28. That as a direct and proximate result of the joint and concurring negligence of the defendants, as hereinabove set out, the plaintiff has been and will be severely damaged * * *."

Demurrer *ore tenus* is overruled, and judgment of Superior Court sustained.

*Blakeney, Alexander & Machen, Hedrick & McKnight for plaintiff, appellee.*

*Robinson, Jones & Hewson for defendant Rheem Manufacturing Company, appellant.*

WINBORNE, C. J. The grounds upon which defendant Rheem Manufacturing Company demurs are substantially these: (1) That the complaint as amended fails to state a cause of action against it, and (2) that the complaint contains allegations constituting judicial admissions by the plaintiff as the pleader thereof, from which it follows as a matter of law that the negligence of this defendant, if any, was not a proximate cause of plaintiff's injury by reason of intervening negligence of Ervin Construction Company.

"The office of demurrer is to test the sufficiency of a pleading, admitting for the purpose, the truth of the allegations of fact contained therein, and ordinarily relevant inferences of fact, necessarily deducible therefrom, are also admitted." *Stacy, C.J.,* in *Ballinger v. Thomas,* 195 N.C. 517, 142 S.E. 761. *Clinard v. Lambeth,* 234 N.C. 410, 67 S.E. 2d 452. *Belch v. Perry,* 240 N.C. 764, 84 S.E. 2d 186, and numerous other cases.

A complaint must contain a plain and concise statement of the facts constituting a cause of action. G.S. 1-122. Both the statute, G.S. 1-151, and decisions of this Court require that in the construction of a pleading for the purpose of determining its effect its allegations shall be construed with a view to substantial justice between the parties. Every reasonable intendment and presumption must be in favor

of the pleader. Indeed a pleading must be fatally defective before it will be rejected as insufficient. *Ins. Co. v. McCraw*, 215 N.C. 105, 1 S.E. 2d 369; *Belch v. Perry, supra,* and cases there cited, and numerous others.

Applying these principles to the facts alleged in the amended complaint here tested in respect to the first question above stated it appears that the case comes within the purview of the line of cases of which *Gas Co. v. Mongomery Ward & Co.*, 231 N.C. 270, 56 S.E. 2d 689, is typical. There in opinion by *Devin, J.,* later C. J., it is said: "The general rule is that one who authorizes the use of a potentially dangerous instrumentality in such a manner or under such circumstances that it is likely to produce injury is held responsible for the natural and probable consequences of his act to any person injured who is not himself at fault. Known danger attendant upon a known use imposes obligation upon him who authorizes it * * * An article is said to be imminently dangerous when, though it may safely be used for the purpose intended, if properly constructed, yet by reason of defective construction a threatened injury may be reasonably apprehended from its use," citing authorities.

Now as to the second question: "Insulating negligence relates to proximate cause, and is an intervening act which could not have been reasonably foreseen and which becomes the efficient cause of the injury, and thus breaks the causal connection of the primary negligence" —headnote 4 in the *Montgomery Ward* case, *supra.* In the light of this definition applied to the facts alleged in the complaint, the Court is unable to hold as a matter of law that the negligence of Rheem Manufacturing Company, if any, is insulated by that of Ervin Construction Company, if any. It may be that when the evidence is introduced such an issue may arise.

Let it be noted that in this opinion the Court is considering only matters of pleading. What the facts may develop to be on the trial in Superior Court this Court has expressed no opinion and does not now do so.

For reasons stated the judgment of the court overruling the demurrer of Rheem Manufacturing Company is

Affirmed.

HIGGINS, J., took no part in the consideration or decision of this case.